IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GESELE JONES

    v.               :       Civil Action No. DKC 09-3362

KOONS AUTOMOTIVE, INC.,
et al.

## MEMORANDUM OPINION

Presently pending and ready for resolution in this consumer lending case are two motions: a motion to dismiss (ECF No. 16) filed by Defendant Koons Automotive, Inc. ("Koons") and a motion to intervene (ECF No. 21) filed by Prestige Financial Services, Inc. ("Prestige"). The issues have been fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Koons' motion will be granted in part and denied in part, while Prestige's motion will be granted.

## I.  Background

### A.  Factual Background[1]

This case traces its origins to December 18, 2008, when Plaintiff Gesele Jones bought a car. That day, Jones went to a

---

[1]  The facts recited herein are drawn from Jones' amended complaint. (ECF No. 13-2).

car dealership in Capitol Heights, Maryland called Hampton Park Enterprise, LLC ("Hampton Park"). (ECF No. 13-2, Am. Compl. ¶ 7). Jones claims that during her time at the dealership Koons "initiated contact with [her]"; upon her arrival, she was told Koons would "do the sale." (ECF No. 13-2, Am. Compl. ¶¶ 7, 11). Koons then sold her a used 2007 Pontiac G6 for $15,386.12. (ECF No. 13-2, Am. Compl. ¶ 7; ECF No. 13-3, Ex. 1, at 1). Jones gave Koons possession of her 2006 Ford Taurus as a trade-in and Koons "agreed to pay off" a lien on the car held by Prestige. (ECF No. 13-2, Am. Compl. ¶¶ 7, 24, 53). Unfortunately, Koons allegedly did not pay off the lien. (*Id.* ¶ 14, 24-25, 54, 68). Jones alleges this failure to pay was intentional and in fact motivated by "actual malice." (*Id.* ¶ 59).

Before the transaction, Koons purportedly failed to disclose several finance charges. For instance, the Buyers Order lists a purchase price of $16,386.12, with a down payment of $1,000.00 paid at the time of purchase. (ECF No. 13-3, Ex. 1, at 1).[2] Jones maintains that she did not make any down payment and that the figure's inclusion "caused [Jones] to pay an additional $60 in sales tax." (ECF No. 13-2, Am. Compl. ¶

---

[2]    The Retail Installment Sales Contract also lists a $1,000 down payment. (ECF No. 13-3, Ex. 3, at 3).

15).  She characterizes this additional tax as an undisclosed finance charge.  (*Id.*).  Jones further alleges that Koons failed to disclose several other items she views as finance charges, including a $20 "lien fee," $223.25 for Virginia title tax, and a $300 processing fee (that exceeded Maryland's maximum fee of $100).  (*Id.* ¶¶ 16-18).

Koons also did not disclose to Jones that the car she was purchasing "had been used for short-term rentals."  (*Id.* ¶¶ 22, 36, 45).  Allegedly, Enterprise Leasing Company previously owned the car.  (*Id.* ¶ 22).  In Jones' view, this omission was intentional and part of a pattern of conduct by Koons wherein it sold former rental cars without disclosing their origins.  (*Id.* ¶¶ 31-33).

### B.  Procedural Background

Jones filed her initial complaint against Hampton Park and Koons on December 17, 2009.  (ECF No. 1).  She then filed an amended complaint on March 15, 2010 against only Koons.  The amended complaint contains nine counts: one count alleging violations of the Truth in Lending Act ("TILA"), one count alleging violations of the Maryland Consumer Protection Act ("MCPA"), one count alleging breach of the implied warranty of merchantability, two counts alleging deceit by non-disclosure or

concealment, two counts alleging unjust enrichment, and two counts alleging negligent misrepresentation.

On April 13, 2010, Koons moved to dismiss the amended complaint. (ECF No. 16). A few months later, on September 12, 2010, Prestige moved to intervene as a plaintiff, asserting that it has an interest in the present lawsuit in light of Koons' alleged promise to pay off the lien on Jones' old car, the 2006 Ford Taurus. (ECF No. 21). Both Jones and Koons oppose the intervention. (ECF Nos. 22, 23).

## II. Analysis

### A. Motion to Dismiss

Koons has moved to dismiss on three separate grounds: lack of personal jurisdiction, improper venue, and the amended complaint's failure to state a claim.

### 1. Personal Jurisdiction

The court must first decide whether it has personal jurisdiction over Koons "because the dismissal of a case on an issue relating to the dispute, such as a failure to state a claim, is improper without resolving threshold issues of jurisdiction, including personal jurisdiction." *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006).

Koons is a Virginia corporation with a principal place of business in Fredericksburg, Virginia. (ECF No. 13-2, Am. Compl.

¶ 4). When a court's power to exercise personal jurisdiction over a nonresident defendant such as Koons is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)). Where, as here, the court chooses to rule without conducting an evidentiary hearing, relying solely on the complaint, affidavits and discovery materials, "the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the challenge."[3] *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *New Wellington*

---

[3] Summary disposition is appropriate here because the jurisdictional facts are not in dispute.

*Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (quotations omitted).

"[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst*, 334 F.3d at 396. Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 212-13 (4th Cir. 2002). That broad reach does not suggest that analysis under the long-arm statute is irrelevant. Rather, it merely reflects that, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." *Dring v. Sullivan*, 423 F.Supp.2d 540, 545 (D.Md. 2006) (quoting *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F.Supp. 116, 118-19 n.2 (D.Md. 1995)).

### a.   The Maryland Long-Arm Statute

The court's analysis begins with the language of the long-arm statute, which provides in relevant part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State;
> >
> > (2) Contracts to supply goods, food, services, or manufactured products in the State; [or]
> >
> > (3) Causes tortious injury in the State by an act or omission in the State[.]

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). Jones relies on these three provisions to justify jurisdiction in this case. (ECF No. 20, at 4).[4]

"Only one provision of the statute need be satisfied in order to assert jurisdiction." *Bahn v. Chicago Motor Club Ins. Co.*, 98 Md.App. 559, 568 (1993). The first provision, transacting business in the state under Section 6-103(b)(1), "requires the defendant to conduct actions which culminate in purposeful activity within the state." *Costar Realty Info.,*

---

[4]   There is a limiting condition in subsection (a): "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." This condition applies here.

*Inc. v. Field*, 612 F.Supp.2d 660, 671 (D.Md. 2009) (quotation marks omitted). Such activity "may be shown by a nonresident defendant initiating contact with the forum state." *Id.*

The court is satisfied that, at the very least, Section 6-103(b)(1) authorizes the exercise of jurisdiction over Koons. Koons contends that Jones does not "allege that Koons held itself out as a Maryland car dealership, that Koons purported to transact business in Maryland, or that Koons or any agent was even present in Maryland." (ECF No. 16, at 18). Koons is mistaken. Although the amended complaint is admittedly somewhat muddled, it does state that Koons went to a location in Maryland, where it "initiated contact" with Jones and sold her the car.[5] (ECF No. 13-2, Am. Compl. ¶ 7). Jones further alleges that an agent of Koons prepared the requisite purchasing documents. (*Id.* ¶ 14). Those documents were purportedly

---

[5] Koons claims that this "bald allegation" is "belied by [Jones'] contradictory allegation that she 'went to Hampton's place of business in Maryland' to purchase a car and that she 'was informed that Koons would do the sale of the Vehicle.'" (ECF No. 16, at 18 (quoting ECF No. 13-2, Am. Compl. ¶¶ 7, 11)). Although Plaintiff's allegations are a bit confusing, the court is constrained to "construe all relevant pleading allegations in the light most favorable to [Jones], assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *New Wellington Fin. Corp.*, 416 F.3d at 294. Jones' allegations are not so patently unreasonable as to justify rejecting them out of hand.

prepared and signed in Maryland. (*Id.* ¶ 13). Agents of Koons allegedly informed Plaintiff – in Maryland – that it would pay off the lien on her 2006 Ford Taurus. (*Id.* ¶ 8). Koons also purportedly took possession of the Taurus in Capitol Heights. (*Id.* ¶ 7). All of these acts taken together constitute sufficient evidence of "purposeful activity" within the state of Maryland. *See, e.g.*, *Jason Pharms., Inc. v. Jianas Bros., Packaging Co., Inc.*, 94 Md.App. 425, 433-34 (1993) (finding jurisdiction under Section 6-102(b)(1) where initial contact, negotiations, contract formation, and payment took place in Maryland); *cf. Sleph v. Radtke*, 76 Md.App. 418, 427 (1988) (holding that Virginia defendant transacted business under Section 6-102(b)(1) when it executed a purchase money mortgage for property in Maryland, even though it never entered Maryland).

### b. Due Process

The inquiry does not end with the long-arm statue, however, as the court must also consider whether the court's exercise of jurisdiction over Koons would violate the Due Process Clause of the Fourteenth Amendment. In this step, the question is whether the defendant purposefully established "minimum contacts" with Maryland such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). Put differently, the court must consider whether Koons' contacts with Maryland are substantial enough that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The United States Court of Appeals for the Fourth Circuit has distilled these somewhat abstract concepts into three basic prongs: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan*, 293 F.3d at 712.

As to the first prong, Jones has presented several facts supporting a prima facie finding that Koons has engaged in purposeful availment. In *Consulting Engineers*, 561 F.3d at 278, the Fourth Circuit provided several factors that indicate such availment in the business context; many of those factors are present here. Koons allegedly "reached into [Maryland] to solicit or initiate business" with Jones (ECF No. 13-2, Am. Compl. ¶ 7) and "made in-person contact with the [Jones] in

[Maryland] regarding the business relationship" (*id.* ¶¶ 7, 14).[6]
*Consulting Eng'rs*, 561 F.3d at 278.  Koons and Jones purportedly
negotiated and prepared the documents in Capitol Heights; Jones
also delivered her 2006 Ford Taurus and received a promise that
the lien would be paid off in Capitol Heights.  (ECF No. 13-2,
Am. Compl. ¶¶ 7, 8); *see Consulting Eng'rs*, 561 F.3d at 278
(listing "the nature, quality and extent of the parties'
communications about the business being transacted" and "whether
the performance of contractual duties was to occur within the
forum" as relevant factors).  Although there is no indication
that Koons maintains an office or owns property in this state
(ECF No. 16, at 18), that fact is simply not enough to overcome
the other factors noted above.  Entering a state and initiating
(and ultimately completing) a sales contract with that state's
resident is a more significant contact than other contacts found
constitutionally sufficient by the Fourth Circuit.  *See, e.g.*,
*Hardy v. Pioneer Parachute Co., Inc.*, 531 F.2d 193, 195 (4th Cir.
1976) (finding sales of parachutes in South Carolina satisfied
due process contact requirement).

---

[6]    The Fourth Circuit accords "special weight" to the
fact that the defendant initiates the contact with the forum
state resident.  *See CFA Inst. v. Inst. of Chartered Fin.
Analysts of India*, 551 F.3d 285, 295 n.17 (4th Cir. 2009).

"The second prong of the test for specific jurisdiction – that the plaintiff's claims arise out of the activities directed at the forum – requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs*, 561 F.3d at 278-79. This prong requires little discussion, as it is clear that Jones' claims relate to Koons' alleged contacts in Maryland. Koons' alleged December 2008 interaction with Jones in Maryland is the obvious genesis of this dispute.

An exercise of jurisdiction by this court would also be "constitutionally reasonable," satisfying the third prong of the test. *CFA Inst.*, 551 F.3d at 296. "Generally, such an analysis ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." *Id.* (quotation marks omitted). Several considerations are relevant here, including "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs*, 581 F.3d at 279.

Each of the above considerations counsels a finding of jurisdiction. The burden on Koons of litigating in this forum would not be great. Koons states that it is located "in Virginia, nearly 70 miles from this Court." Practically speaking, that is no overwhelming distance and parties are regularly summoned over greater distances. Koons has secured local counsel and is prepared to go forward. Moreover, Maryland has an interest in having this lawsuit adjudicated in this state. Jones is a Maryland resident who, in addition to her TILA claim, is pursuing several remedies under Maryland law, including one claim under a Maryland statute. *See CFA Inst.*, 551 F.3d at 297 ("Virginia has a valid interest in the resolution of the grievances of its citizens and businesses, particularly when they potentially involve issues of Virginia law."). The plaintiff has an interest in litigating the dispute in the forum where she made the purchase underlying this case and the forum where she now resides. No general "interests of the states" are especially relevant here. In sum, it cannot be said that it would offend "traditional notions of fair play and substantial justice" to exercise jurisdiction in this instance. *Int'l Shoe,* 326 U.S. at 316. It is now a long-held truism that, "with respect to interstate contractual obligations, . . . parties who reach out beyond one state and create continuing

relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). Because Jones has established a prima facie case for the exercise of jurisdiction over Koons, Koons' motion to dismiss for lack of personal jurisdiction will be denied.

### 2. Venue

Koons additionally moves to dismiss for improper venue, pursuant to Fed.R.Civ.P. 12(b)(3), or to transfer under 28 U.S.C. § 1406(a) to the "District of Virginia." (ECF No. 16, at 19-21). In this circuit, when venue is challenged by a motion to dismiss, the plaintiff bears the burden of establishing that venue is proper. *G*ov't *of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F.Supp.2d 468, 471 (D.Md. 2002). Furthermore, just as with a motion to dismiss for lack of personal jurisdiction, "in deciding a motion to dismiss [for improper venue], all inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the plaintiff most strongly can plead them'" *Three M Enters., Inc. v. Tex. D.A.R. Enters., Inc.*, 368 F.Supp.2d 450, 454 (D.Md. 2005) (quoting *Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F.Supp. 381, 385 (D.Md. 1990)).

14

Venue for this action is governed by 28 U.S.C. § 1391(b):

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Pursuant to 28 U.S.C § 1391(c), "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." It follows then that personal jurisdiction over the sole corporate defendant provides a proper basis for venue in this district. *See, e.g.*, *The Rockefeller Univ. v. Ligand Pharms.*, 581 F.Supp.2d 461, 467 (S.D.N.Y. 2008).

Furthermore, both parties agree that venue can be proper if § 1391(a)(2) applies, *i.e.*, if "a substantial part of the events or omissions giving rise to the claim occurred" in Maryland. Defendant asserts that venue is improper for reasons similar to those it presented in an attempt to defeat personal jurisdiction. Specifically, Defendant contends,

15

> The amended complaint is vague and
> unspecific as to where the alleged
> transaction took place. Nowhere in the
> amended complaint does Jones allege that
> Koons directed any conduct towards Maryland
> or even entered Maryland. Thus, it cannot
> be argued from the amended complaint that 'a
> substantial part of the events or omissions
> giving rise to the claim' occurred in
> Maryland.

(ECF No. 16, at 19-20). Yet the amended complaint is not as vague as Koons suggests. It specifically alleges that the transaction in question occurred at "8909 Edgeworth Drive, Capitol Heights, MD." (ECF No. 13-2, Am. Compl. ¶¶ 7, 13). It provides that Jones never went to Koons' location in Fredericksburg, Virginia. (*Id.* ¶ 12). The application for a Certificate of Title to the Maryland Motor Vehicles Administration (which was attached to the amended complaint as Exhibit 4) also lists Koons as a Maryland dealer. (*Id.*, Ex. 4, at 7). A substantial part of the relevant events undeniably took place in Maryland and this district is an appropriate venue. This court will not dismiss for improper venue.

It would also be inappropriate to transfer this case to the Eastern District of Virginia. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "To prevail on a motion to change venue pursuant to § 1404, the

16

defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice."[7] *Helsel v. Tishman Realty & Constr. Co., Inc.*, 198 F.Supp.2d 710, 711 (D.Md. 2002) (internal marks and citation omitted); *see also Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md. 2002). Mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion under Section 1404(a). *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D.Md.2002); *Helsel*, 198 F.Supp.2d at 712. Therefore, to satisfy its burden the defendant should submit, for example, "affidavits from witnesses and parties explaining the hardships [it] would suffer if the case were heard in the

---

[7]     Factors to consider in making this decision include "1) the plaintiff's choice of forum; 2) relative ease of access to sources of proof; 3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; 4) possibility of a view of the premises, if appropriate; 5) enforceability of a judgment, if one is obtained; 6) relative advantage and obstacles to a fair trial; 7) other practical problems that make a trial easy, expeditious, and inexpensive; 8) administrative difficulties of court congestion; 9) local interest in having localized controversies settled at home; 10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and 11) avoidance of unnecessary problems with conflicts of laws." *Helsel*, 198 F.Supp.2d at 711-12.

plaintiff's chosen forum." *Dow*, 232 F.Supp.2d at 499 (citing *Helsel*, 198 F.Supp.2d at 712).

Koons asks for a transfer here because "[p]resumably, it would have to call multiple employees or former employees as witnesses, all of whom are located in or around Fredericksburg, Virginia." (ECF No. 16, at 20-21). Koons goes on to speculate that Jones will not call any witnesses other than herself. (*Id.* at 21). As noted above, presumptions and speculation about unknown and unnamed witnesses are not proper bases for a motion to transfer. Furthermore, the court is confident that Koons will not be unduly inconvenienced by having to litigate a case just 70 miles away from its place of business. "[T]he time and expense of travelling to Maryland to defend this case" are relatively insubstantial and are not of such great weight as to justify depriving Jones of her choice of forum.[8] "It is not as if the key witnesses will be asked to travel to the wilds of Alaska or the furthest reaches on the Continental United States." *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805

---

[8]    The court observes that this court's location in Greenbelt is fewer than 25 miles away from the Alexandria courthouse in the Eastern District of Virginia. "The difference in driving distances (which amounts to less than 25 miles) between the courthouses . . . does not amount to a material difference in the convenience of the witnesses." *Bartronics, Inc. v. Power-One, Inc.*, 510 F.Supp.2d 634, 638 (S.D.Ala. 2007).

F.Supp. 1392, 1397 (S.D.Tex. 1992).  This action will not be transferred.

**3.    Failure to State a Claim**

**a.  Standard of Review**

Koons has also moved to dismiss each count of the complaint for failure to state a claim.  The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S.

266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### b. Truth in Lending Act (Count I)

In count one of the amended complaint, Jones alleges several TILA violations. "TILA was passed by Congress in order to assure a meaningful disclosure of credit terms. . . . TILA

20

mandates that creditors make specific disclosures before extending credit to consumers. . . . TILA requires a lender to disclose to a borrower, among other things, the amount financed, the finance charge, the annual percentage rate, and the total sale price." *Tripp v. Charlie Falk's Auto Wholesale Inc.*, 290 F.App'x 622, 626 (4th Cir. 2008) (citations and quotation marks omitted).

Koons complains that the amended complaint fails to specify what the relevant TILA statutes require and how Koons allegedly violated them. (ECF No. 16, at 5-7). To be sure, the amended complaint can be a difficult read. Paragraph 16 of the amended complaint, for instance, reads:

> Koons failed to disclose the lien fee of $20 in the itemization paid to the MVA for public officials without disclosing it as a finance charge in violation of § 15 U.S.C. 1605.4(d)(2) and Reg Z § 226.4(e)(2) and it violated the Truth in Lending by failing to provide the required disclosures prior to consummation in violation of § 1638(b) and by failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a).

(ECF No. 13-2, Am. Compl. ¶ 16). Title "15 U.S.C. [§] 1605.4(d)(2)" is a non-existent statute. "Reg Z[9] §

---

9  "The Federal Reserve Board ('FRB'), the agency charged with administering [TILA], has adopted Regulation Z to implement

226.4(e)(2)" is likely a reference to 12 C.F.R. § 226.4(e)(2), but that provision does not apply here.[10]  Section 1638(b) is most probably a citation to 15 U.S.C. 1638(b), which requires (among other things not especially relevant here) that disclosures be made prior to consummation of the credit transaction.  The complaint correctly characterizes 15 U.S.C. § 1632(a), which requires that disclosures mandated by TILA be displayed "clearly and conspicuously."  In short, none of the statutory citations are especially helpful in explaining what TILA-mandated disclosures Koons failed to make.

Some courts have dismissed TILA claims under Rule 12(b)(6) when the complaint failed to specify accurately what TILA requirements had allegedly been violated.  *See, e.g.*, *McCann v. Quality Loan Serv. Corp.*, No. C10-181RSM, 2010 WL 3118313, at *3 (W.D.Wash. July 21, 2010); (dismissing TILA claim for failing to cite proper statutory provision; stating that court would not "not guess at the statutory basis of a claim, nor frame it for a plaintiff who is represented by competent counsel"); *Zimmerman*

---

the Act's mandates and methods of disclosure."  *Tripp*, 290 F.App'x at 626.

[10]  The provision states that certain premiums for insurance may be excluded from the disclosed finance charge in certain circumstances.

22

*v. Longemann*, No. 09-cv-210-slc, 2009 WL 4407205, at *4-5 (W.D.Wis. Nov. 30, 2009) (dismissing TILA claim where complaint did not "identify what defendants failed to do or disclose that was required by the act"); *Hargrove v. WMC Mortg. Corp.*, No. 07-2468, 2008 WL 4056292, at *2 (S.D.Tex. Aug. 29, 2008) (dismissing TILA claim for failing to specify particular TILA disclosure requirement that was alleged to be violated). Those cases, however, are distinguishable from the present one, as Jones' complaint states (if rather clumsily) what TILA requirements Koons allegedly violated and offers facts establishing those violations. In particular, Koons purportedly failed to disclose certain specified finance charges (*i.e.*, a processing fee, a lien fee, and certain taxes) and failed to disclose the "correct amount financed." (ECF No. 13-2, Am. Compl. ¶¶ 15-19). These factual allegations of inaccuracy are enough to state a plausible claim for relief. *See Staley v. Americorp Credit Corp.*, 164 F.Supp.2d 578, 583 (D.Md. 2001) ("It does not matter that Plaintiff has not specified the specific [TILA] statute or regulations that entitle her to relief. The allegation that the disclosure that she received was inaccurate is sufficient to state a claim upon which relief could be granted." (citations omitted)); *see also In re Sterten*, 546 F.3d 278, 287 (3ᵈ Cir. 2008) ("Under notice pleading standards, it is

sufficient for a plaintiff to plead an error in the disclosed finance charges to bring the statutory definition of error into play."). Even under *Iqbal*, it remains the case that "[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2[d] Cir. 1988). Count one will not be dismissed.

### c. Maryland Consumer Protection Act (Count II)

Count two of the amended complaint alleges violations of the MCPA. "The [MCPA], codified at Maryland Code (1975, 2005 Replacement Volume) §§ 13-101 *et seq.* of the Commercial Law Article was intended to provide minimum standards for the protection of consumers in [Maryland]." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 140 (2007). In this case, Jones alleges that Koons violated the MCPA by (1) failing to disclose that the 2007 Pontiac G6 was previously used as a short-term rental, (2) failing to disclose that it would not pay off the lien on the 2006 Ford Taurus, and (3) violating TILA. (ECF No. 13-2, Am. Compl. ¶¶ 20-26). Koons argues that the amended complaint "contains no substantive factual allegations regarding the alleged fact that the car was previously used as a rental

vehicle"[11] and, more generally, that the amended complaint does not plead injury. (ECF No. 16, at 8-9).

Jones has not adequately pled injury with respect to two of the three alleged MCPA violations. "[A] private consumer bringing an action under the [M]CPA must show actual injury or loss sustained as the result of a practice prohibited under the [M]CPA." *Barksdale v. Wilkowsky*, 192 Md.App. 366, 404 (2010) (quotations omitted). "[I]n order to articulate a cognizable injury under the [MCPA], the injury must be objectively identifiable." *Lloyd*, 397 Md. at 143. A complaint adequately pleads loss, for instance, when it points to some amount that it would "take to remedy the loss [the plaintiff] incurred as a result of the respondents' alleged deceptive trade practices." *Id.* at 150.

---

[11] The complaint pleads sufficient facts concerning the 2007 Pontiac G6's prior use. Jones alleges that Enterprise Leasing Co. previously owned the vehicle and used it for short-term rentals. (ECF No. 13-2, Am. Compl. ¶ 22). She alleges that Koons failed to disclose that fact at the time of purchase. (*Id.*). She maintains that if she had known of that "material fact," she would not have purchased the car. (*Id.*). Koons notes that Jones has not alleged that "Koons was even aware of the car's prior status" (ECF No. 16, at 8), but knowledge is not an element of claims under the MCPA provisions that Jones invokes. *See Consumer Prot. Div. v. Morgan*, 387 Md. 125, 211 (Md. 2005) (quoting *Golt v. Phillips*, 308 Md. 1, 10-11 (1986)).

The complaint does not point to any "cost of remedy" or any other actual harm with respect to Koons' alleged concealment of the car's prior use as a rental car.  Jones merely states that she would not have purchased the car or "would have demanded significant price concessions."  (ECF No. 13-2, Am. Compl. ¶ 22).  She does not allege that she incurred additional repair costs, for instance, because of the car's prior use.  Nor does she allege that the concealed fact caused any diminution in the value of the car.  *See Hallowell v. Citaramanis*, 88 Md.App. 160, 170 (1991) (determining whether actual injury was establishing by looking to whether purchaser suffered a diminution in the value of the purchased property because of seller's misrepresentations).  A hypothetical price concession is simply not the type of tangible injury appropriately recognized in a private MCPA action, as virtually any misrepresentation could support such a claim of "injury."  The MCPA claim based on the car's status as a rental car must be dismissed.

There is also no actual injury alleged – not even in a conclusory fashion – with respect to Jones' claims that the TILA violations constitute violations of the MCPA.  (ECF No. 13-2, Am. Compl. ¶ 26).  Jones argues that the TILA-based claim under the MCPA "can again be related solely back to the failure by Koons to pay off the previous loan."  (ECF No. 20, at 7).  But

it is hard to understand how the failure to make TILA-mandated disclosures caused Jones actual injury *independent* from the misleading representation that it would pay off Jones' loan. Lacking any specific harm that may be linked directly to the lack of TILA disclosures, Jones is unable to establish the necessary injury or loss to bring a private claim under the MCPA.

Jones does plead the requisite injury or loss, however, with respect to her claim regarding Koons' promise to pay off the lien on her 2006 Ford Taurus. Because of Koons' alleged misrepresentation, Jones holds a $13,148 debt that she never expected to owe at the conclusion of the transaction. (ECF No. 13-2, Am. Compl. ¶ 24). Such a claim appropriately alleges that Jones received less than "the full benefit of [her] agreement" with Koons, *Lloyd*, 397 Md. at 149; she was to give up her Ford Taurus and a sum of money in exchange for the Pontiac G6 and release from her prior debt on the Taurus.[12] Instead, she alleges that she walked away with only the Pontiac G6 and even more debt. Therefore, count two does state a claim for relief,

_____

[12] From the documents, it appears that Jones entered into a new financing agreement on the Pontiac with C&F Finance Co. for $15,386.12. (ECF No. 13-3).

but only with respect to Koons' alleged failure to pay off the lien on the 2006 Ford Taurus.

### d. Implied Warranty of Merchantability (Count III)

Jones also alleges a breach of the implied warranty of merchantability,[13] as the 2007 Pontiac G6 would not "pass without objection in the trade" because "the contract description [did not] include a clear and conspicuous disclosure that [the Pontiac G6] had previously been used as a short-term rental." (ECF No. 13-2, Am. Compl. ¶ 28). Koons responds that Jones misunderstands the nature of the implied warranty of merchantability. According to Koons, the implied warranty of merchantability is only meant to ensure that goods are substantially free of defects and is not meant to address misrepresentations and omissions like those alleged here. (ECF No. 16, at 9-10).

The Fourth Circuit has explained that the warranty of merchantability under Maryland law is:

> implied in the sale of goods by a merchant who deals in goods of that kind. To be merchantable, goods must "[p]ass without objection in the trade under the contract description" and must be fit for the

---

[13]     The implied warranty of merchantability is defined in a Maryland provision taken from the Uniform Commercial Code. *See* Md. Code Ann., Comm. Law § 2-314.

> ordinary purpose for which such goods are
> used. Whether a good is merchantable also
> depends in part on usage of trade. This
> definition of merchantability incorporates
> trade quality standards and the consumer's
> reasonable expectations into the concept of
> merchantability.

*Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 225 (4th Cir.

2009). There is a long history of applying the implied warranty

of merchantability in the used car context. *See* Diane L.

Schmauder, Annotation, *Liability on Implied Warranties in Sale*

*of Used Motor Vehicle*, 47 A.L.R.5th 677 § 4 (1977). Even so,

most – if not all – of these cases contemplate physical defects

in automobile that offend the expectations of reasonable

consumers. Indeed, the Fourth Circuit has construed the implied

warranty to reach only those defects:

> The difficulty is that, so far as these
> plaintiffs are concerned, GM's diesel-
> equipped cars have served the traditionally
> recognized purpose for which automobiles are
> used. Since cars are designed to provide
> transportation, the implied warranty of
> merchantability is simply a guarantee that
> they will operate in a safe condition and
> substantially free of defects. Thus, where
> a car can provide safe, reliable
> transportation, it is generally considered
> merchantable.

*Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989);

*see also Lloyd*, 397 Md. at 157 ("[T]he implied warranty of

merchantability not only warrants that the automobile will

operate effectively, but that it will provide reasonably safe

transportation."). *Carlson* rejects the argument that the implied warranty of merchantability is meant to protect mere consumer expectations that a product holds its value, absent some tangible defect so substantial as to render the automobile virtually useless. *Carlson*, 883 F.2d at 298. Fundamentally, that is the very argument that Jones advances here, where she contends Koons breached the warranty by failing to inform her of the car's rental car past. (ECF No. 13-2, Am. Compl. ¶ 28). There is no suggestion that the car was unfit for use or otherwise functionally useless. Therefore, Jones' breach of the implied warranty of merchantability claim will be dismissed.

### e. Negligent and Intentional Misrepresentations Concerning the Pontiac G6's Prior Status as a Rental Car (Counts IV and VI)

Jones also alleges that Koons' failure to disclose the 2007 Pontiac G6's prior use as a daily rental constituted negligent and intentional misrepresentation. (ECF No. 13-2, Am. Compl. ¶¶ 30-37, 44-51). Koons asks for dismissal because it says these claims lack "key factual allegations," including a failure to allege that Koons was aware of the car's prior use as a daily rental car.

Koons first contends that the amended complaint "lacks factual allegations that would make [Jones'] claims at least plausible[,] . . . [including] the history of the car, such as

where when and for how long it was used as a daily rental." (ECF No. 16, at 11). As the court has already explained in addressing Jones' MCPA claim, Jones has alleged sufficient "historical facts" concerning the car's prior history as a daily rental. *See supra* note 11. The amended complaint states that Enterprise Leasing used the car as a rental, a fact that Koons purportedly failed to disclose.

Koons also argues that Jones failed to allege that it was aware of the car's history. Here again, however, Koons fails to look to the actual elements of negligent and intentional misrepresentation and cites no authorities. Maryland case law makes clear that an action for negligent misrepresentation will lie when a defendant who owes a duty of care to the plaintiff "volunteer[s] an erroneous opinion" with the knowledge that plaintiff will rely on it (and the plaintiff does in fact rely on it to his detriment). *Cooper v. Berkshire Life Ins. Co.*, 148 Md.App. 41, 57 (2002). A plaintiff does not have to prove that defendant actually possessed knowledge of the statement's falsity to assert a claim for negligent misrepresentation. *See, e.g.*, *Miller v. Fairchild Indus., Inc.*, 97 Md.App. 324, 345 (1993) ("Even where *deliberate* falsehood is lacking or cannot be proven, however, a plaintiff may still state a cause of action for negligent misrepresentation." (emphasis in original)).

Indeed, the lack of a scienter requirement is the critical distinction between negligent misrepresentation and claims of fraud, deceit, and intentional misrepresentation. *See Doe v. Prudential Ins. Co. of Am.*, 860 F.Supp. 243, 250 (D.Md. 1993). Thus, the claim premised on negligent misrepresentation will not be dismissed.

Koons' argument, however, is valid as to the intentional misrepresentation claim. In that context, the plaintiff does have to show "that either [the misrepresentation's] falsity was known to [the plaintiff] or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him." *Brass Metal Prods., Inc. v. E-J Enters., Inc.*, 189 Md.App. 310, 353 (2009) (quoting *B.N. v. K.K.*, 312 Md. 135, 149 (1988)); *see also VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704 (1998). Reckless indifference "arises when the defendant makes the representation even though aware that he does not know whether it is true or false – where he knows that he lacks knowledge as to its truth or falsity – and nonetheless makes the representation without regard to that lack of knowledge." *Hoffman v. Stamper*, 385 Md. 1, 42 (Md. 2005). Jones has not pled facts showing that Koons either (1) knew the car was previously used as a rental car and nevertheless represented otherwise or (2) was aware that it had no knowledge of the car's

prior history but nevertheless represented that the car was never a rental car. Absent such facts, Jones has failed to state a claim for intentional misrepresentation and that count must be dismissed.[14]

### f. Negligent and Intentional Misrepresentations Concerning Koons' Alleged Promise to Pay Off the Lien on the 2006 Ford Taurus (Counts VII and IX)

Jones alleges an additional pair of claims based on intentional and negligent misrepresentations, this time based on Koons' representation that it would pay off the lien on Jones' 2006 Ford Taurus. (ECF No. 13-2, Am. Compl. ¶¶ 52-60, 67-71). Unsurprisingly, Koons avers that both these claims fail.

Jones' second intentional misrepresentation claim suffers the same deficiency as her first one. Although she conclusorily alleges that Koons intentionally misrepresented that the lien would be repaid, she does not allege facts establishing that Koons possessed the requisite scienter. Generally, "promissory or predictive statements" such as "I will pay your lien" cannot form the basis for an intentional misrepresentation claim; such statements are actionable only if they are "made with a present

---

[14]    The amended complaint's conclusory suggestions that Koons acted intentionally are the type of "legal conclusions couched as factual allegations" that the court need not accept on a motion to dismiss. *Iqbal*, 129 S.Ct. at 1950.

intention not to perform them." *Miller*, 97 Md.App. at 343;
*accord Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*,
264 F.3d 424, 445 (4th Cir. 2001); *Appel v. Hupfield*, 198 Md.
374, 379 (1951).  There are no facts in the complaint indicating
that Koons did not intend to pay the lien at the time it assured
Jones that it would.  Count seven must be dismissed.

The negligent misrepresentation claim based on the 2006
Ford Taurus lien also does not pass muster.  This claim, like
the intentional misrepresentation claim, is premised on Koons'
promissory statement that it would pay off the lien on the 2006
Ford Taurus.  As the Court of Special Appeals of Maryland
explained:

> A negligent misrepresentation claim based on
> statements promissory or predictive in
> nature, however, suffers the same fate as a
> deceit claim based on such statements.
> Unless the plaintiff puts forward evidence
> tending to show that the "promisor" or
> "predictor" made the statements with the
> present intention not to perform, the claim
> is not viable.  But any promise that is made
> with the present intention not to perform or
> any prediction that is made with present
> knowledge that the predicted event will not
> occur is, perforce, an intentional
> misrepresentation, not a negligent one, and
> thus cannot sustain an action for negligent
> misrepresentation.

*Miller*, 97 Md.App. at 346; *accord Plana v. Shoresales, LLC*, No.
JFRM-03-1227, 2003 WL 21805290, at *6 (D.Md. July 14, 2003).
Accordingly, count nine must be dismissed as well.

### g. Unjust Enrichment (Counts V and VIII)

Finally, Jones also alleges two unjust enrichment claims, again stemming from Koons' failure to pay off the lien on the trade in car and Koons' failure to disclose the car's former status as a daily rental car. (ECF No. 13-2, Am. Compl. ¶¶ 38-43, 61-66). Koons insists that Jones cannot allege an unjust enrichment claim while also alleging the existence of a written contract. (ECF No. 16, at 12-13).

It is indeed the case that "[i]n Maryland, a claim of unjust enrichment, which is a quasi-contract claim, may not be brought where the subject matter of the claim is covered by an express contract between the parties." *Janusz v. Gilliam*, 404 Md. 524, 537 (Md. 2008) (quotation marks omitted); *see also FLF, Inc. v. World Publ'ns, Inc.*, 999 F.Supp. 640, 642 (1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties."). "Generally, courts are hesitant to deviate from the principle of the rule and allow unjust enrichment claims only when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual rescission of the contract, when rescission is warranted, or when the express contract does not fully

address a subject matter." *Cnty. Com'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 101 (2000).

The relevant transaction in the present case would seem to have applicable express contracts. (*See* ECF No. 13-3, Exs. 1-3, at 1-6). Nevertheless, the amended complaint does not contend – and Jones does not suggest – that any of these exceptions to the general rule barring quasi-contractual remedies are applicable here. Instead, Jones argues that she should be permitted to plead unjust enrichment as an alternative basis for relief. She notes that Koons has not conceded that there is a valid agreement between Jones and Koons covering the same subject matter.

The court will not dismiss the unjust enrichment claims at this time. Jones is correct that Koons has not conceded the existence of a valid contract.[15] Moreover, the Federal Rules of Civil Procedure allow parties to plead claims in the alternative. *See* Fed.R.Civ.P. 8(e)(2) ("A party may also state as many separate claims or defenses as the party has regardless

---

[15] In fact, in response to Prestige's motion to intervene, Koons assumes that it is a party to the Retail Installment Sales Contract, but "does so without waiving or prejudicing its rights to argue to the contrary if and when it is required to answer the complaint in this case." (ECF No. 23, at 4).

of consistency and whether based on legal [or] equitable . . . grounds."). Although Jones will not ultimately be able to recover both contractual and quasi-contractual remedies, dismissing the unjust enrichment claims now would be premature. *See, e.g.*, *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F.Supp.2d 660, 666 (D.Md. 2009) (declining to dismiss unjust enrichment claim pled in the alternative where contract terms remained in dispute); *MTBR LLC v. D.R. Horton, Inc.*, No. RDB-07-3363, 2008 WL 3906768, at *12 (D.Md. Aug. 22, 2008) (declining to dismiss quasi-contractual claim where parties did not agree that there was a valid agreement covering same subject matter). The court will not dismiss counts five and eight.

**B.  Motion to Intervene**

Prestige, the lienholder of the lien on the 2006 Ford Taurus trade-in car, has moved the court (1) to grant intervention of right under Fed.R.Civ.P. 24(a)(2), or, alternatively, (2) to permit intervention under Fed.R.Civ.P. 24(b)(1)(B). (ECF No. 21). It wishes to bring claims against Koons for breach of contract and tortuous interference with contractual relations. (*See generally* ECF No. 21-11, Intervenor Compl.). As noted above, both Jones and Koons oppose. (ECF Nos. 22, 23).

37

Federal Rule of Civil Procedure 24(a) allows a party to intervene as of right.  That rule states, in pertinent part:

> On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

"[T]o intervene as of right, a movant must show: (1) timely application; (2) an interest in the subject matter of the underlying action; (3) that a denial of the motion to intervene would impair or impede the movant's ability to protect its interest; and (4) that the movant's interest is not adequately represented by the existing parties to the litigation." *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Perlberg*, 268 F.R.D. 218, 224-25 (D.Md. 2010).  The party seeking to intervene bears the burden of establishing all four requirements.  *U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.*, 349 F.Supp.2d 934, 937 (D.Md. 2004) (citing *In re Richman*, 104 F.3d 654, 658 (4th Cir. 1997)).  Neither Jones nor Koons suggest that the motion to intervene was untimely, nor could they.  Consequently, only the latter three factors must be considered here.

## 1.    Interest in the Subject Matter

Prestige asserts that it has a direct interest in the action because it is a third-party beneficiary to the contracts between Jones and Koons.  Such an interest has been held sufficient to justify intervention as of right.  *See, e.g.*, *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001); *Fifth Third Bank of W. Ohio v. United States*, 52 Fed.Cl. 202, 204 (2002).  Koons and Jones nevertheless make two arguments in response:  Prestige is not a third-party beneficiary and its mere "economic interest" is not a sufficient interest to justify intervention.

In Maryland, "[a]n individual is a third-party beneficiary to a contract if the contract was intended for his or her benefit and it . . . clearly appears that the parties intended to recognize him or her as the primary party in interest and as privy to the promise." *Dickerson v. Longoria*, 414 Md. 419, 452 (2010) (quotation marks and brackets omitted).  A third-party beneficiary may bring suit to enforce the contract even though he is not actually a party to it.  *Id.*

Prestige has adequately alleged that it is a third-party beneficiary to the agreements.  One form of third-party beneficiary is a creditor beneficiary, which may be found "where no purpose to make a gift appears and performance of the promise

will satisfy an actual or supposed or asserted duty of the promisee." *Lovell Land, Inc. v. State Highway Admin.*, 408 Md. 242, 261 (2009) (quotations omitted). "[I]n order to determine who is a creditor beneficiary, courts should consider the following as controlling factors: the intention of the parties to recognize a person or class as a primary party in interest as expressed in the language of the instrument and consideration of the surrounding circumstances as reflecting upon the parties' intention."[16] *Ferguson v. Cramer*, 349 Md. 760, 767 (1998). Here, the language and circumstances of the agreement reflect that Prestige was such a creditor beneficiary. The Buyers Order and the Retail Installment Sales Contract between Jones and Koons both provide for a payoff of the lien on the 2006 Ford Taurus. (*See* ECF No. 21-11, Intervenor Compl. ¶¶ 17-18). Jones' amended complaint also alleges that the parties intended for Prestige to be paid off. (*See, e.g.*, ECF No. 13-2, Am. Compl. ¶ 53). Prestige has an interest in getting its promised $13,148 payout from Koons. In short, Prestige is a third-party beneficiary.

---

[16] The court looks to the language and circumstances that reflect the parties' intention at the time the contract was actually made. Thus, it does not matter that both Jones and Koons (rather self-servingly) protest that the contracts were not intended to benefit Prestige.

Even so, Jones complains that Prestige merely possesses an economic interest insufficient to support intervention. (ECF No. 22, at 4-5). In support, Jones cites *Mountain Top Condominium Association v. Dave Stabbert Master Builder Inc.*, 72 F.3d 361, 366 (3$^d$ Cir. 1995). In *Mountain Top*, the United States Court of Appeals for the Third Circuit concluded that a "mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." *Id.* As Prestige recognizes, however, *Mountain Top* stands in tension with Fourth Circuit cases allowing intervention where the intervenor asserts an economic interest.[17] *See, e.g.*, *JLS, Inc. v. Pub. Serv. Comm'n of W. Virginia*, 321 F.App'x 286, 290 (4th Cir. 2009) (finding movants should have been permitted to intervene as of right where case affected "the amount of income they expected to earn"); *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986) (reversing denial of intervention as of right by individual apple pickers who could receive higher wages as a result of judgment); *Teague v. Bakker*, 931 F.2d 259, 261-62 (4th

---

[17] Indeed, the Third Circuit recognized that tension in *Liberty Mutual Insurance Co. v. Treesdale, Inc.*, 419 F.3d 216 (3$^d$ Cir. 2005), wherein it rejected a more permissive approach applied by the Fourth Circuit in *Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991). *See Liberty Mut. Ins. Co.*, 419 F.3d at 224 ("[T]he result in *Teague* is inconsistent with our analysis in *Mountain Top*.").

Cir. 1991) (finding class action group was entitled to intervene as of right where judgment would affect group's ability to collect judgment). Prestige does not assert some amorphous general claim of economic interest, but rather seeks to protect its particular right to the benefits of this transaction.[18] That interest is strong enough to support intervention.

**2. Impairment of the Interest**

Prestige asserts that denial of its motion would impair its ability to protect its interest, as "resolution of the Koons Action may be dispositive of Prestige's claims against Koons for breach of contract." (ECF No. 21-1, at 8). Although Prestige says it could be "collaterally estopped" from pursuing a claim against Koons if the litigation goes forward without it, the court does not need to determine that this litigation would have a formal preclusive effect on a later action brought by Prestige against Koons. "[I]n order to intervene of right, a party need not prove that he would be bound in a res judicata sense by any

---

[18] The particularlized nature of Presitge's interest (*i.e.* an interest in the money that changed hands between Koons and Jones on December 18) might very well be enough to justify intervention even under the more restrictive approach taken by the Third Circuit. *See Mountain Top*, 72 F.3d at 366 ("While a mere economic interest may be insufficient to intervene, an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund.").

judgment in the case." *Spring Constr. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980). Rather, it is enough for a party to show that "the disposition of a case would, as a practical matter, impair the applicant's ability to protect his interest in the transaction." *Id.*

Prestige's interest could be impaired by the disposition of this action. *Hardy-Latham v. Wellons*, 415 F.2d 674 (4th Cir. 1968), provides an example of how. In *Hardy-Latham*, the defendant sold his candy business with the help of the plaintiff, a business broker. *Id.* at 676-77. When the broker attempted to collect her commission from the sale's proceeds, the defendant refused to pay; the broker then sued. *Id.* at 676. Two other parties then intervened, saying that they had also helped in the sale of the business and deserved a portion of the commission. *Id.* The Fourth Circuit concluded that the two intervenors were appropriately permitted to intervene as of right because they "claim[ed] an interest in both the transaction and the fund which [were] the subject of the main action, and if the entire amount were paid directly to [the plaintiff], their ability to collect their proper share would [have been] as a practical matter [] more difficult." *Id.* The same is true here: Prestige claims an interest in the trade-in car transaction, and its ability to collect its share would be

43

made more difficult if Jones is permitted to collect the entire sum. This obstacle to collection is a sufficient impairment to justify intervention as of right.

### 3. Inadequacy of Representation

Finally, Prestige argues that Jones will not adequately represent its interests. Prestige carries a "minimal" burden of demonstrating that Jones will not adequately represent its interest. *Teague*, 931 F.2d at 259. Prestige is not obliged to show that representation of its interest *will* be inadequate, but must demonstrate only that representation *may* be inadequate. *JLS*, 321 F.App'x at 289 (citing *Trbovich v. UMWA*, 404 U.S. 528, 538 n.10 (1972)). If Prestige is found to have the same ultimate objective as Jones, a presumption arises that Prestige's interests are adequately represented. *Commonwealth of Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). That presumption may be overcome by demonstrating "adversity of interest, collusion, or nonfeasance." *Id.*[19]

_____

[19] Prestige correctly argues that Jones and Koons seek to impose the wrong standard of "compelling evidence" on Prestige's motion to intervene. A movant is required to offer "compelling evidence" that its interests are inadequately represented only when the party to the suit has a legal obligation to represent the movant's interests. *First Penn-Pacific Life Ins. Co. v. William R. Evans, Chtd.*, 200 F.R.D. 532, 538 (D.Md. 2001). There is no suggestion that Jones has any such obligation to represent Prestige's interests.

Prestige has carried its minimal burden. Both Jones and Koons say that Prestige and Jones share a common objective, but that is not true. To be sure, Jones and Prestige are both battling for the same prize, *i.e.*, the promised lien payoff on the 2006 Ford Taurus. But if Jones wins, she will receive the money for her own use – it will not necessarily be used to pay off the obligation to Prestige. Therefore, Prestige has an independent objective of seeing that its debt is satisfied.

Given the rather antagonistic history between Prestige and Jones, these two parties are not working towards a common goal. Jones filed suit against Prestige in the Circuit Court for Prince George's County seeking cancellation of the debt related to the 2006 Ford Taurus. (*See generally* ECF No. 21-3). The case was removed to this court and is now pending before another judge. *See Jones v. Prestige Fin. Servs., Inc.*, 1:10-cv-02136-BEL (D.Md. filed August 4, 2010). There is a certain adversity of interest inherent in the lender-borrower relationship, which has only been exacerbated by Jones' attempts to cancel the lien on the car. Prestige should not be forced to trust that Jones will nevertheless protect its interests in the present case.

In addition, as a corporation, Prestige would appear to have greater financial resources than Jones, an individual plaintiff. That disparity between financial resources may

reflect a chance that Jones may be "less vigorous" in asserting her claim. *Teague*, 931 F.2d at 259. Prestige has also leveled different, and perhaps more effective, challenges to Koons' failure to pay the lien, further suggesting that its interests are not fully represented. *JLS*, 321 F.App'x at 291.

In sum, because Prestige has established all four factors necessary to support intervention as of right, it will be permitted to intervene as a plaintiff.[20]

### III. Conclusion

For the foregoing reasons, Koons' motion to dismiss will be granted in part and denied in part. Prestige's motion to intervene will be granted. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

---

[20] Given the court's finding on the issue of intervention as of right, there is no need to address Prestige's alternative request for permissive intervention. That should not suggest that permissive intervention would be inappropriate. To the contrary, there are substantial grounds for allowing permissive intervention here.