IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GESELE JONES           :

   v.                 :   Civil Action No. DKC 09-3362

KOONS AUTOMOTIVE, INC. :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consumer lending case is a motion filed by Defendant Koons Automotive, Inc. to dismiss the intervenor complaint filed by Prestige Financial Services, Inc. (ECF No. 29). The issues have been fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Koons' motion will be denied.

I.  **Background**

This case began when Plaintiff Gesele Jones filed a complaint against Defendant Koons Automotive, Inc. ("Koons") in December 2009. (ECF No. 1). Jones alleges that in December 2008 she purchased a new car from Koons. As part of that purchase, she traded in her previous vehicle, a 2006 Ford Taurus, with the understanding that Koons would pay off the existing lien on the car. Intervenor Prestige Financial

Services ("Prestige") held that lien. According to Jones, Koons failed to pay off the lien.[1]

In a memorandum opinion dated November 5, 2010, the court determined, among other things, that Prestige would be permitted to intervene. *See Jones v. Koons Auto., Inc.*, --- F.Supp.2d ---, No. DKC 09-3362, 2010 WL 4449388, at *14-16 (D.Md. Nov. 5, 2010). In accordance with that opinion, Prestige's intervenor complaint was filed November 9. (ECF No. 27). Prestige's complaint asserts two counts against Koons: breach of contract and tortious interference with contractual relations.

Many of the facts of Prestige's complaint track those in Jones' complaint. Prestige alleges that it lent Jones money in December 2006 to purchase a 2006 Ford Taurus; in exchange, Prestige took a security interest in the Taurus. (*Id.* ¶¶ 26-27). Two years later, in December 2008, Koons sold Jones a 2007 Pontiac G6. (ECF No. 27 ¶¶ 9, 12-13). As consideration for the purchase, Koons agreed to take Jones' Taurus as a trade-in and pay off the remaining balance on the Taurus lien held by Prestige. (*Id.* ¶ 18). In connection with that sale and trade, Koons prepared a Buyer's Order, Odometer Disclosure Statement,

---

[1] The facts alleged in Jones' amended complaint are more fully described in a prior opinion in this case. (*See* ECF No. 25).

Retail Installment Sales Contract ("RISC"), and an Application for Certificate of Title. (*Id.* ¶¶ 9, 15). Both the Buyers Order and the RISC indicated that a pay-off of $13,148 would be made on the Taurus. (*Id.* ¶¶ 17, 18). Prestige contends that, contrary to its promise, Koons never paid Prestige. (*Id.* ¶ 21). Prestige maintains that Koons, in entering the trade-in transaction with Jones, either (a) intentionally induced Jones into discontinuing payments to Prestige by misrepresenting that Koons would pay them or (b) induced Jones to buy a second vehicle that it knew she could not afford, rendering it "impossible for Jones to continue her contractual obligations with Prestige." (*Id.* ¶¶ 32).

After Prestige filed its intervenor complaint, Koons moved to dismiss it. (ECF No. 29). Prestige filed an opposition on December 23, 2010. (ECF No. 32). No reply was filed.

## II. Standard of Review

Koons has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual

allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In addition to the complaint itself, a court may consider "any documents that are attached to it." *CACA Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009).

In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

**III. Analysis**

Koons moves to dismiss both of Prestige's claims, which allege that Koons breached a contract with Prestige and that

4

Koons tortiously interfered with the contractual relationship between Jones and Prestige. Each will be addressed in turn.

   A.   **Breach of Contract**

Prestige's breach of contract claim is premised on the allegation that it was an intended third-party beneficiary to the contract between Jones and Koons. (*See* ECF No. 27 ¶ 22). As Koons concedes, "[d]espite the fact that a third-party beneficiary is not a party to the contract, he or she can bring suit to enforce the contract." *Dickerson v. Longoria*, 414 Md. 419, 452 (2010). Koons maintains, however, that Prestige has not alleged facts establishing that it is a third-party beneficiary.

Koons' argument is largely identical to the one already considered and rejected on Prestige's motion to intervene. What the court said then remains equally true now:

> Prestige has adequately alleged that it is a third-party beneficiary to the agreements. One form of third-party beneficiary is a creditor beneficiary, which may be found "where no purpose to make a gift appears and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee." *Lovell Land, Inc. v. State Highway Admin.*, 408 Md. 242, 261 (2009) (quotations omitted). "[I]n order to determine who is a creditor beneficiary, courts should consider the following as controlling factors: the intention of the parties to recognize a person or class as a primary party in interest as expressed in the language of the instrument and

5

> consideration of the surrounding circumstances as reflecting upon the parties' intention." *Ferguson v. Cramer*, 349 Md. 760, 767 (1998). Here, the language and circumstances of the agreement reflect that Prestige was such a creditor beneficiary. The Buyers Order and the Retail Installment Sales Contract between Jones and Koons both provide for a payoff of the lien on the 2006 Ford Taurus. (*See* ECF No. 21-11, Intervenor Compl. ¶¶ 17-18). Jones' amended complaint [and now, Prestige's intervenor complaint] also alleges that the parties intended for Prestige to be paid off. (*See, e.g.*, ECF No. 13-2, Am. Compl. ¶ 53). Prestige has an interest in getting its promised $13,148 payout from Koons. In short, Prestige [has alleged facts that would render it] . . . a third-party beneficiary.

*See Jones*, 2010 WL 4449388, at *14; *see also* 13 Richard A. Lord, *Williston on Contracts* § 37:15 (4th ed. 2010 supp.) ("A creditor beneficiary has a very definite interest in any promise to pay his claim. A contract made between A and B, by the terms of which B agrees to pay a debt which A owes to C, is a contract made for the benefit of C." (quotation marks and footnotes omitted)). Prestige's claim for breach of contract will not be dismissed.

**B.   Tortious Interference With Contractual Relations**

Koons also seeks to dismiss Prestige's claim for intentional interference with contractual relations. As both parties agree, a party asserting such a claim must establish six elements:

6

> (1) The existence of a contract or a legally protected interest between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render impossible the performance of the contract; (4) without justification on the part of the defendant; (5) the subsequent breach by the third party; and (6) damages to the plaintiff resulting therefrom.

*Brass Metal Prods, Inc. v. E-J Enters., Inc.*, 189 Md.App. 310, 348 (2009) (quotation marks omitted). Koons suggests that Prestige has not alleged facts demonstrating the requisite intent and has not presented any sufficiently wrongful acts by Koons. Prestige counters that it has adequately alleged intent and that it need not prove any separate wrongful acts by Koons to succeed on its claim.

To establish intent, Prestige must show that Koons' conduct was "directed at" Prestige's contractual relationship with Jones. *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F.Supp.2d 460, 465 (D.Md. 2008). For instance, "[a] plaintiff may prove tortious intent by showing that the defendant intentionally induced the breach or termination of the contract in order to harm the plaintiff or to benefit the defendant at the expense of the plaintiff." *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 301 (1994). The tort also may arise when "the actor does not act for the purpose of

7

interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action." *See* Restatement (Second) of Torts § 766, cmt. j.[2] The common thread in each of these instances is that the breach of the contract amounts to more than an incidental consequence of the defendant's acts.

Prestige has pled sufficient facts evidencing intent. The intervenor complaint alleges that Koons knowingly misrepresented its willingness to pay off Prestige's lien in an effort to convince Jones to purchase a car from Koons. Assuming the facts of the complaint are true, Koons' actions were directed at Prestige in that Jones' subsequent failure to make payments to Prestige was an expected consequence of Koons' promise to make them in her stead. Alternatively, Prestige has also plead that interference was "substantially certain" to result, as Prestige was aware of Jones' financial status and aware that she would be unable to satisfy two car payments. These factual allegations are sufficient. *See Iqbal*, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content

---

[2] Maryland courts have looked to the Restatement (Second) of Torts § 766 when defining the tort of intentional interference with contract. *See, e.g.*, *Macklin*, 334 Md. at 297.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Koons also contends that Prestige has inadequately alleged an improper or wrongful act. According to Koons, "the types of wrongful acts that have established liability for this tort have been limited to violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and institution or threat of groundless civil suits or criminal prosecutions in bad faith." (ECF No. 29, at 6 (quoting *Volcjak v. Wash. Cnty. Hosp. Ass'n*, 124 Md.App. 481, 512 (1999))). Koons is mistaken.

Under Maryland law, the tort of intentional interference with contractual relations has two manifestations: "the tort . . . is committed when a third party's intentional interference with another in his or her business or occupation induces a breach of an existing contract or, absent an existing contract, maliciously or wrongfully infringes upon an economic relationship." *Macklin*, 334 Md. at 297. The two types of tort actions differ in terms of the amount of interference that is tolerated. "[W]here a contract between two parties exists, the circumstances in which a third party has a right to interfere with the performance of that contract are more narrowly restricted. A broader right to interfere with economic

relations exists where no contract or a contract terminable at will is involved." *Natural Design v. Rouse Co.*, 302 Md. 47, 69-70 (1984).

As Prestige observes, the wrongful acts listed by Koons come from cases implicating no contract at all. *See, e.g.*, *Volcjak*, 124 Md.App. 481, 511-12 (addressing claim by doctor that hospital's acts interfered with doctor's "business relations with patients at the hospital"); *K&K Mgmt., Inc. v. Lee*, 316 Md. 137, 156-68 (1989) (addressing claim by restaurant owner that landlord's breach of lease affected "relations with the [restaurant's] Korean customers" and some suppliers). These situations implicate the broader right to interfere. But the facts alleged in Prestige's complaint suggest that it had a binding, not-terminable-at-will contract with Jones. Thus, the complaint would indicate that the narrower right to interfere applies to this case. "[W]here there is an existing contract, not terminable at will, between a plaintiff and a third party, acts by a defendant to induce the third party to breach that contract are, themselves, improper and wrongful." *Macklin*, 334 Md. at 304; *see also Ronald M. Sharrow, Chtd. v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 765 (1986) ("But if the party causing the breach acts solely to benefit himself, or to cause injury to another, without a right to so act, such conduct is

improper and may subject the party to liability for the injury suffered."); *but see Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 655 n.18 (1994) (recognizing confusion in decisions of Court of Appeals of Maryland over whether purposeful interference with a specific contract without a separate wrongful act triggers liability). Koons' alleged act in inducing the breach is a sufficient wrongful act to support Prestige's claim.

Consequently, Prestige's claim for tortuous interference with contractual relations will also not be dismissed.

## IV. Conclusion

For the foregoing reasons, Koons' motion to dismiss will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge