IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GESELE V. JONES

    v.                        :       Civil Action No. DKC 09-3362

KOONS AUTOMOTIVE, INC., et al.

## MEMORANDUM OPINION

This case arises from Plaintiff Gesele Jones's purchase of a Pontiac G6 in December 2008, involving the trade-in of a Ford Taurus. As it relates to Defendant Koons Automotive, Inc. ("Koons"), Plaintiff's Consolidated Amended Complaint asserts claims for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann. Com. Law § 13-101 *et seq.*, common law torts, and unjust enrichment. Presently pending is the motion filed by Koons for summary judgment on all claims against it. (ECF No. 79). Plaintiff has cross moved for summary judgment as to liability on her TILA, MCPA, fraud, and negligence claims. (ECF No. 82). For the following reasons, the each motion will be granted in part and denied in part.

## I. Background

### A. Factual Background

On December 18, 2008, Plaintiff Gesele Jones purchased a used 2007 Pontiac G6 from Hampton Park Enterprises in Capitol Heights, Maryland.  At the time of the transaction, Plaintiff was unaware that the vehicle she was purchasing had previously been owned by a major rental car company and had been used as a daily rental car.

The parties dispute the identity of the seller.  Plaintiff contends that Koons Automotive, Inc. was the actual seller, while Defendant contends that she purchased the car from Hampton Park Enterprises, LLC.  During the course of negotiating the purchase, Ms. Jones communicated with employees of both companies.  Koons maintains a dealership and office in Fredericksburg, Virginia, which Ms. Jones never visited.  Ms. Jones, however, was told that someone from Virginia would be travelling to Hampton Park to handle the financing of the Pontiac.  David Powell, a Koons employee, was introduced to Ms. Jones as the "finance manager," and he prepared all of the paperwork for the transaction.  Furthermore, the relevant paperwork all reflects a transaction between Ms. Jones and Koons.

The relevant documents include a Buyer's Order, an odometer statement, a Retail Installment Sale Agreement ("RISC"), and an Application for a Certificate of Title.

There are, however, two sets of documents. Plaintiff states that one set was provided initially during the transaction, and that she returned to sign a second set later. Both are dated December 18, 2008. The first Buyer's Order and RISC are attached to Plaintiff's motion as ECF Numbers 82-7 and 82-9. The second set of documents is attached as ECF Numbers 82-6 and 82-8.

The first RISC shows a total amount financed of $15,386.12, with a monthly payment of $360.72, including itemized taxes and fees of: a $153.12 sales tax, $300 processing fee, a tag and license fee of $183, a title fee of $50, a $13,148 trade-in value and repayment, and a $1,000 down payment. (ECF No. 82-9). The first Buyer's Order also shows a total amount financed of $15,386.12, including itemized taxes and fees of: a $300 processing fee, a tag and license fee of $173.25, a filing fee of $9.75, a tag and license fee of $173.25, a title fee of $50, a title tax of $153.12, a $13,148 trade-in value and repayment, and a $1,000 down payment. (ECF No. 82-7). Both copies of the second RISC that the parties submit are incomplete. (ECF Nos. 82-8 & 79-4). Nevertheless, the second copy shows a total amount financed of $15,631.62, with a monthly payment of

$386.76, including itemized fees and taxes of: $133.62 sales tax, $500 Guaranteed Auto Protection ("GAP") insurance, $90 vendor's insurance, a $13,148 trade-in value and repayment, and a $1,000 down payment. (ECF No. 82-6). The second Buyer's Order also shows a total amount financed of $15,631.62. (ECF No. 82-6), including itemized fees and taxes of: a $300 processing fee, $133.62 title tax, $136 tag and license fee, $50 title fee, $27 "UMV" fee, a $20 filing fee, $590 for vendor's and GAP insurance, a $13,148 trade-in value and repayment, and a $1,000 down payment. Both copies of the RISC also include a choice of law provision that provides: "Applicable Law: Federal law and the law of the state of our address shown on the front of this contract apply to this contract." (ECF No. 82-8, at 4). The seller's address is listed as being in Fredericksburg, VA. (*Id.* at 1).

In her deposition testimony, Ms. Jones explains why she signed two sets of documents by noting that she received a call from someone in Koons's financing department who told her that she never paid the $1,000 down payment that was listed on the transaction paperwork. (ECF No. 82-17, at 12). Previously, she had been told that this was simply an "overage" related to the trade-in of her vehicle. Later, a Hampton Park employee told her that she would have to come back in to adjust the paperwork. Plaintiff also affirmed in deposition testimony that when she

returned to Hampton Park, she was given blank documents to sign and was told that the documents would be filled in later. (*Id.* at 21). She signed the blank documents. Plaintiff maintains that when the newly executed Buyer's Order and RISC were completed, numbers different from the first set of documents were filled in, as outlined above.

Ms. Jones also attests that Koons agreed to pay off the loan on her 2006 Ford Taurus, which she traded in as partial payment for the Pontiac G6. She affirms that Koons took physical possession of the Taurus and its keys at the time of the transaction. (*Id.* at 12). At that time, she owed over $13,000 to Prestige Financial Services ("Prestige"). Koons, however, failed to pay off the loan with Prestige. Approximately one month after Ms. Jones believed the transaction was completed, Prestige informed her that she was delinquent on the loan for the Taurus. Plaintiff contacted Hampton Park a number of times about the loan default before returning in person. To remedy the situation, a Hampton Park employee gave her a check for two monthly payments to Prestige. Shortly thereafter, she received word from Hampton Park that the Taurus had been stolen. Later, the Taurus was found in the District of Columbia, and Plaintiff devoted time and money to retrieving the car from the impoundment lot, re-keying the car, and paying lapsed insurance on the car. After Plaintiff brought the car

back to Maryland, Prestige repossessed it and notified Plaintiff that she was responsible for the remaining balance on the loan.

**B.   Procedural Background**

On December 17, 2009, Plaintiff filed a complaint against Hampton Park and Koons.  (ECF No. 1).  She then filed an amended complaint only against Koons.  (ECF No. 13).  Koons moved to dismiss the amended complaint.  (ECF No. 16).  Prestige moved to intervene as a third-party Plaintiff against Defendant Koons. (ECF No. 21).  The motion to dismiss was granted in part, and the motion to intervene was granted.  (ECF Nos. 25 & 26).  After Koons's motion to dismiss Prestige was denied (ECF Nos. 33 & 34), Plaintiff filed a consolidated amended complaint against both Koons and Prestige (ECF No. 52).  Plaintiff settled her claims with Prestige.  (ECF Nos. 61 & 64).[1]  As to Koons, Plaintiff alleges violations of TILA, MCPA, fraud, deceit by non-disclosure, negligent misrepresentation, negligence, and unjust enrichment.

Presently pending is the motion filed by Koons for summary judgment on all claims against it.  (ECF No. 79).  Plaintiff has cross moved for summary judgment as to liability on her TILA,

_____

[1]  The third party claims asserted by Prestige Financial Services against Koons have been assigned to Plaintiff and remain pending.  (ECF No. 62).  These parties have not submitted a copy of the settlement agreement.

MCPA, fraud, and negligence claims. (ECF No. 82). Koons responded (ECF No. 85), and Plaintiff replied (ECF No. 86.)

## II. Standard of Review

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). At the same time, the facts that are presented must be construed in the light most favorable to

the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III. Analysis

### A.   Count I:   TILA Violations

TILA requires "meaningful disclosure of credit terms [and] mandates that creditors make specific disclosures before extending credit to consumers." *Tripp v. Charlie Falk's Auto Wholesale Inc.*, 290 F.App'x 622, 626 (4th Cir. 2008) (citations and quotation marks omitted).   TILA further "requires a lender to disclose to a borrower, among other things, the amount financed, the finance charge, the annual percentage rate, and the total sale price." *Id.*

In Count I of the consolidated amended complaint, Plaintiff alleges that Koons violated TILA in three distinct ways:   (1) the false disclosure in the Buyer's Order that she made a $1,000 down payment, leading to other inaccuracies that caused her to pay extra taxes; (2) failing to disclose or itemize the lien fee of $20.00, the Virginia title tax of $153.12, and the title tax of $223.25; and (3) falsely indicating that the loan held by Prestige on the Taurus would be paid off by Koons.

Koons argues that it did not violate TILA because the second RISC and Buyer's Order accurately disclose the fees that she paid.   It further argues that a disclosure of the unpaid down payment and its failure to pay off Plaintiff's loan on the

Taurus are not TILA violations. (ECF No. 82-8). Plaintiff now seems to agree that ECF No. 82-8 is the "operative document" for TILA allegations, but argues that she did not have a copy of that document until seven months after filing the Consolidated Amended Complaint. (ECF No. 86, at 2). Based on the new exhibit, she asserts additional TILA violations that are different in critical respects from those alleged in the consolidated amended complaint, namely that: (1) she was never provided a copy of the disclosures, including GAP insurance, but was rather required to sign a blank copy of the second Buyer's Order and RISC; (2) there are several misstatements of the fees and taxes actually charged to her; and (3) again the false promise that the previous loan on her Taurus would be paid off.

### 1. Inaccurate Disclosure of Plaintiff's $1,000 Down Payment

"[I]f a charge is not paid directly by the customer, but is paid solely by the creditor and is absorbed [by] the creditor as a cost of doing business, that charge is not a finance charge which must be disclosed" pursuant to TILA. *Rigenback v. Crabtree Cadillac-Oldsmobile, Inc.*, 99 F.Supp.2d 199, 204 (D.Conn. 2000) (quoting *Jennings v. Edwards*, 454 F.Supp. 770, 778 (M.D.N.C. 1978)); *cf. Rayburn v. Car Credit Ctr. Corp.*, No. 00-3361, 2000 WL 1508238, at *2 (N.D.Ill. Oct. 10, 2000) (denying motion to dismiss where "there exists a question of

fact as to whether the amount financed set forth in the contract was the correct amount in light of the down payment actually paid"). The parties do not dispute that Plaintiff did not actually pay the $1,000, that it was never charged to her, and that its inclusion in the loan documents therefore does not affect the amount financed. Plaintiff argues that the misstated down payment affected the accuracy of the amount financed that was listed on the loan documents. (ECF No. 82, at 12). Defendant argues that it absorbed the cost of this disclosed down payment. The disclosure of a $1,000 down payment on all iterations of the Buyer's Order and RISC and Defendant's subsequent failure to collect that payment from Plaintiff cannot constitute a TILA violation. Summary judgment in favor of Defendant Koons is therefore appropriate on this portion of Plaintiff's TILA claim.

### 2. Failure to Pay-Off Loan on Plaintiff's Trade-In

Koons further contends that the disclosure in the RISC and Buyer's Order regarding the Prestige loan and its subsequent failure to pay off the trade-in cannot be a violation of TILA because that failure did not ultimately affect the terms of the loan agreement, *i.e.* the amount financed or the amount of the monthly payments.

TILA requires that the lender provide "a written itemization of the amount financed," including "each amount that

is or will be paid to third persons by the creditor [here, Koons] on the consumer's behalf, together with an identification of or reference to the third person." 15 U.S.C. § 1638(a)(2)(B)(iii). Section 1638(a)(2)(B)(iii) requires "accurate disclosure" of all fees paid to third parties. *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir. 1997).

All versions of the RISC itemized that Koons would pay the loan balance to discharge Plaintiff's loan on the Taurus. Because Koons did not make any payments to Prestige, the holder of that loan, Koons incorrectly itemized the amounts it paid to third parties on behalf of Plaintiff, in violation of TILA. Summary judgment as to liability in Plaintiff's favor is therefore appropriate on this portion of Plaintiff's TILA claim.

### 3. Inaccurate Disclosure of Taxes and Fees

As to the remaining portions of Plaintiff's TILA claim, in both the consolidated amended complaint and as articulated after the new documents were disclosed, Plaintiff argues that Koons failed properly to disclose or itemize a number of taxes and fees. (ECF Nos. 51, at 5-7 & 82, at 9-11). After Koons disclosed the second set of loan documents, Plaintiff notes that the two iterations of the RISC and Buyer's Order are inconsistent and inaccurate. She presents documents that she argues show that even the fees that were disclosed in the second

set of documents are inaccurate. Plaintiff concedes that the fees disclosed on the second RISC (ECF No. 82-8) and Buyer's Order (82-6) are consistent with one another, but she argues that they do not accurately disclose the fees that Koons actually charged her. Plaintiff contrasts the figures on these documents with an internal Koons accounting document memorializing the terms of the sale. (ECF No. 82-11). Plaintiff argues that, in all likelihood, this internal document accurately reflects the taxes and fees that she was charged and that were paid to others on her behalf. It shows tag and title fees of $158, but the second Buyer's Order shows tag and license fees totaling $213. The internal accounting document shows the sales tax to be $940.50, but she argues that the second Buyer's Order and RISC that Defendant contends control the transaction only lists the taxes to total $913.43. Plaintiff also notes that Koons's interrogatory answers show a third amount for both licensing fees ($198) and sales tax ($911.43). (ECF No. 82-12).

There is a dispute of fact as to whether the fees were correctly disclosed on the Buyer's Orders and RISCs. There is also a more fundamental dispute of fact as to which documents were provided to Plaintiff on what date, and whether either set accurately discloses the fees Ms. Jones was to pay. Accordingly, summary judgment on this portion of Plaintiff's TILA claim is inappropriate as to either party.

## 4. Alleged Signing of Blank Documents

In her cross motion for summary judgment, Plaintiff also argues for the first time that by requiring Plaintiff to sign a blank Buyer's Order and RISC, Koons violated TILA. She contends that if, as Plaintiff testified, Koons required her to sign blank loan forms, she did not receive *any* disclosures as required by TILA. *See, e.g.*, *Molley v. Five Town Chrysler, Inc.*, No. 07-5415, 2009 WL 440292, at *3 (E.D.Pa. Feb. 18, 2009) (denying motion to dismiss TILA claims where the plaintiffs alleged that they signed blank loan documents at the direction of creditor defendants).

It is well established that "a plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F.Supp.2d 399, 436 (D.Md. 2006) (citing *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)). A plaintiff seeking to amend the complaint at the summary judgment stage must follow the procedures set forth in the Federal Rules of Civil Procedure. *Id.* (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004)). Accordingly, Plaintiff will not be allowed to amend her pleadings in her cross motion for summary judgment, and these arguments will not be considered.

**5. TILA Damages**

Defendant also contends that Plaintiff cannot prove that she suffered any damages as a result of the alleged TILA violations. Therefore, it argues, judgment should be entered in Koons's favor on this count. This argument, however, misreads the statute. As discussed above, Plaintiff clearly asserts at least one viable claim under 15 U.S.C. § 1638(a)(2)(B)(iii). Regardless of whether Plaintiff is entitled to actual damages, § 1640 of TILA provides for which statutory damages resulting from violations of § 1638(a)(2). "[Section] 1638(a)(2) . . . fall[s] squarely within the enumerated provisions in § 1640 for which statutory damages are expressly permitted." *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 607 (S.D.Fla. 2003). Summary judgment cannot be granted in Defendant's favor on this basis.

**6. Bona Fide Error Defense to TILA Violations**

Finally, Defendant argues that, even if it violated TILA, it did so unintentionally. This, it argues, entitles it to escape liability under the statute's explicit *bona fide* error defense. 15 U.S.C. § 1640(c). The *bona fide* error defense of TILA provides:

> A creditor or assignee may not be held liable in any action brought under this section . . . if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and

> resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a *bona fide* error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this title . . . is not a *bona fide* error.

15 U.S.C. § 1640(c). Defendant offers the affidavit of John Koons, shareholder and director of Koons, in which he affirms that "[u]nder Koons policy, employees are not permitted to consummate or finalize any transaction at any location other than the Koons dealership in Fredericksburg, Virginia." (ECF No. 85-6, at 1). Thus, Defendant argues that it had procedures in place to prevent violations of TILA, because other employees at the Fredericksburg location would have caught any discrepancy among the disclosed fees and taxes and the amounts that Plaintiff actually paid. In this instance, Defendant argues that one rogue employee, Mr. Powell, violated those procedures and evaded its institutional safeguards.

There are discrepancies between Mr. Koons' affidavit and his deposition testimony, however. In his deposition testimony, Mr. Koons stated that, if the deal had been completed in Fredericksburg, Mr. Powell "would have signed off on his own deal." (ECF No. 82-18, at 10). There is, accordingly, a question regarding whether the procedures Mr. Koons describes

were reasonably adopted to avoid TILA violations.  If Mr. Powell was permitted to "sign off" on his own deals, the procedure of having all deals take place in Fredericksburg would effectively provide no oversight of Mr. Powell's actions, as Mr. Koons argued it would.  Summary judgment in Defendant's favor for TILA claim on the basis of a *bona fide* error defense is therefore inappropriate.

### B.   Choice of Law

The parties dispute which state's law applies to Plaintiff's remaining causes of action, none of which arise under federal law.  Koons contends that Virginia law applies because of a Virginia choice of law provision in the sales contract.  Plaintiff responds that the clause only applies to contract claims, and not to her MCPA and tort claims, to which she argues Maryland law applies.

For tort claims, both Maryland and Virginia generally adhere to the *lex loci delicti commissi*, or place of harm, principle to determine the applicable substantive law.  *See Steinfelder v. Catlin Specialty Ins. Co.*, No. JKB-12-2970, 2013 WL 2147561, at *3 n.2 (D.Md. May 15, 2013).  Further, a violation of the MCPA "is in the nature of a tort action; it is a legal wrong that is not equivalent to a breach of contract." *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md.App. 217, 265 (1996), *aff'd* 346 Md. 122 (1997).

Because the parties do not dispute that all of the events of this case took place in Maryland, Maryland law applies to the MCPA and tort claims.

Defendant cites *Brigham Young Univ. v. Pfizer, Inc.*, No. 06-890, 2012 WL 918744, at *1 (D.Ut. March 16, 2012), to support the proposition that "a tort claim for fraud based on an allegation that a party used misrepresentation to induce the other into signing a contract was sufficiently related 'to the subject matter of [the contract]' to apply the [contractual] choice of law provision." *Id.* (quoting *Unibase Sys., Inc. v. Prof'l Key Punch*, No. 86-213G, 1987 WL 41873, at *3 (D.Ut. July 15, 1987)). The choice of law clauses at issue in these cases are easily distinguishable from the clause in the RISC. In *Pfizer* and *Unibase*, the clauses elected a particular state law for "any dispute connected herewith" and "any controversy between the parties relating to the subject matter of this agreement." *Id.* Here, the choice of law provision only applies to the contract, and is not as expansive as those at issue in *Pfizer* and *Unibase*: "the law of the state of our address shown on the front of this contract apply to this contract." (ECF No. 82-8, at 4). Accordingly, Maryland law governs all of Plaintiff's remaining claims.

### C. Damages for Maryland Statutory and Tort Law Claims

Defendant asserts that if Maryland law applies, Plaintiff cannot prove the element of damages on any of her remaining counts, and that those counts fail as a matter of law. Koons otherwise fails to address the elements of Plaintiff's remaining counts. Accordingly, because these elements are not disputed, Koons concedes that they are met.

### 1. Claims Based on the Previous Use of Pontiac as Daily Rental Car

Counts II, IV, and VI are claims brought pursuant to the MCPA and Maryland tort law alleging that Koons violated statutory and common law duties to disclose that the Pontiac was previously used as a daily rental car, which caused injury to Plaintiff because she received a devalued vehicle. Because Plaintiff has not designated an expert on the car's devaluation, and because the deadline for expert designations has long since passed, Defendant urges that summary judgment in its favor is warranted.

Plaintiff concedes that she did not designate an expert witness to testify to actual damages resulting from the Pontiac's previous use as a rental car. (ECF No. 86, at 18-19). Plaintiff does not argue that she could offer any other evidence to prove that the Pontiac was devalued as a result of its use as a rental car. Furthermore, she concedes that expert testimony

is required to show that the car is devalued. Plaintiff nonetheless contends that "[c]ompeting expert testimony would not have been a proper subject of summary judgment," and that Defendant would not be prejudiced if Plaintiff is permitted to designate an expert after the Scheduling Order's Rule 26(a)(2) expert disclosure deadline has passed. (ECF No. 86, at 18).

Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." "Good cause" under Rule 16(b)(4) is established when the moving party shows that it cannot meet the deadlines in the scheduling order despite diligent efforts. *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc*., 190 F.R.D. 372, 375 (D.Md. 1999) (quoting *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co*., 986 F.Supp. 959, 980 (D.S.C. 1997), *aff'd by unpublished opinion*, 129 F.3d 116 (Table), 1997 WL 702267 (4th Cir. 1997)). Indeed, although other factors may be considered (*e.g.*, the length of the delay and whether the non-moving party could be prejudiced by the delay), *Tawwaab v. Va. Linen Serv., Inc*., 729 F.Supp.2d 757, 768-69 (D.Md. 2010), "the primary consideration . . . in [determin]ing whether 'good cause' has been shown under Rule 16(b) relates to the movant's diligence," *Reyazuddin v. Montgomery Cnty., Md*., No. DKC 11-0951, 2012 WL 642838, at *3 (D.Md. Feb. 27, 2012). Lack of diligence and carelessness are the "hallmarks of failure to meet the good cause standard." *W.*

*Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2001). "If [the moving] party was not diligent, the inquiry should end." *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995).

Here, Plaintiff offers only one reason for failing to designate an expert on the issue of the car's value: she did not want to spend the money to hire an expert in case the parties settled. Plaintiff did not make diligent efforts to comply with the procedural requirements for disclosing an expert witness. Rather, she made an economic-based tactical decision not to designate an expert witness. That decision is not without consequence. A court's scheduling order "'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Potomac Elec. Power Co.*, 190 F.R.D. at 375 (quoting *Gestetner v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.Me. 1985)). Because Plaintiff failed to designate an expert witness within the deadline, and because she cannot show good cause to modify the scheduling order, summary judgment will be granted in Defendant's favor on Counts II, IV, and VI.

### 2. Claims Based on Defendant's Failure to Pay the Loan on Plaintiff's Trade-In

Count III alleges that Defendant violated the MCPA when it failed to pay off the loan on Plaintiff's Ford Taurus. With

respect to damages, the Maryland Court of Appeals has held that to establish liability, "a private party suing under the Consumer Protection Act must establish 'actual injury or loss.'" *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007) (citations omitted). Such an "injury must be objectively identifiable;" that is, "the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Id.*

Similarly, Count V alleges fraud, and Count VII alleges negligence on the part of Defendant, both based on its failure to pay off the loan on Plaintiff's Taurus. To establish liability for fraud, Plaintiff must prove that she "suffered compensable injury" resulting from Defendant's misrepresentation. *Nails v. S & R, Inc.*, 334 Md 398, 415 (1994) (citations omitted). Likewise, proof of damages is a required element to recover on a theory of negligence. *Johnson v. Valu Food, Inc.*, 132 Md.App. 118, 126 (2000) (holding that "it is necessary to prove actual damages to obtain a recovery in negligence actions").

Defendant asserts that Plaintiff cannot prove actual damages with respect to its failure to pay off her Taurus loan because she has settled her dispute over this loan with Prestige. It argues that the settlement has made her whole regarding any injury caused by Defendant's failure to pay the

loan. Plaintiff responds that her settlement with Prestige has little bearing on her outstanding claims against Koons. Plaintiff concedes that, by virtue of her settlement with Prestige, she no longer owes the balance of the loan. (ECF No. 82, at 19). Rather, she argues that she suffered damages from Koons's failure to pay the loan separate from any claims she had against Prestige. Specifically, she cites the fees paid to retrieve the car from the D.C. impound lot, the costs of paying for lapsed insurance coverage on the car, and the costs of having the car re-keyed.

Plaintiff's settlement with Prestige may not preclude or reduce her recovery against Koons, because although they arise from the same transaction, the claims against each Defendant are distinct from one another. "[T]he settlement of one independent cause of action . . . does not necessarily result in the complete satisfaction of the other." *Buckley v. Brethren Mut. Ins. Co.*, 207 Md.App. 574, 595 (2012) (citing *Huff v. Harbaugh*, 49 Md.App. 661, 670 (1981) (noting that "where it can be established that there is more than one wrong at issue, involving independent parties, the release of one wrongful party would not serve to release any other")). The parties do not submit the settlement agreement, and whether Plaintiff is able to establish damages as to Koons on these counts remains

disputed.  Accordingly, summary judgment in either party's favor on Counts III, V, and VII is inappropriate.

### 3.  Unjust Enrichment Claim

Finally, Plaintiff notes that Count VIII, a claim for unjust enrichment, is moot because Koons acknowledges the validity of the contract between the parties. (ECF No. 82, at 21).  "[W]ithout a dispute concerning the existence of a contract, Plaintiffs are barred from alleging" claims of unjust enrichment and claims under the contract. *Doll v. Ford Motor Co.*, 814 F.Supp.2d 526, 552 (D.Md. 2011) (applying Maryland law); *c.f. MTBR LLC v. D.R. Horton, Inc.*, No. RDB-07-3363, 2008 WL 3906768, at *12 (D.Md. Aug. 22, 2008) (declining to dismiss quasi-contractual claim where parties did not agree that there was a valid agreement covering same subject matter). Accordingly, this claim will be dismissed.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant Koons will be granted in part and denied in part; the motion for summary judgment filed by Plaintiff Gesele Jones will be granted in part and denied in part.  A separate Order will follow.

<table>
<tr><td></td><td>/s/</td></tr>
<tr><td colspan="2">DEBORAH K. CHASANOW<br>United States District Judge</td></tr>
</table>